WILL OF WALKER: LYONS, Appellant, vs. WISCONSIN
VALLEY TRUST COMPANY, Trustee, Respondent.

*February 1—March 2, 1954.*

136

138

140

For the appellant there was a brief by *Fisher, Peickert, Anderson & Fisher,* attorneys, and *Clayton G. Smith* of counsel, and oral argument by *Hiram D. Anderson, Jr.,* all of Stevens Point.

For the respondent there was a brief by *Smith, Okoneski, Puchner & Tinkham* of Wausau, and oral argument by *R. E. Puchner.*

CURRIE, J.   The written agreement entered into between the claimant, Mrs. Lyons, and Gordon, the life beneficiary of the spendthrift trust, dated November 9, 1950, wherein Gordon agreed to pay claimant $50 per week for her services, is of no legal significance under the decision of this court in *Will of Razall* (1943), 243 Wis. 152, 9 N. W. (2d) 639.

Claimant in the *Razall Case* sought to recover from the trustee of a spendthrift trust for necessary legal services supplied to the life beneficiary and this court in its opinion stated (p. 154):

*"It is also clear, however, that the beneficiary cannot go out and hire his own attorney with no notice to the trustee and thus impose the obligation to pay on the trustee.* He must first request help from the trustee. Until he does, there is no basis for a claim against the trust estate and neither is there any basis for interference by the court. Sec. 187, Restatement, 1 Trusts, provides:

" 'Where discretion is conferred upon the trustee with respect to the exercise of a power, its exercise is not subject to control by the court, except to prevent an abuse by the trustee of his discretion.'

"*Until the trustee has refused assistance to the beneficiary there can be no question of an abuse of discretion.* The record is not clear as to whether a demand was made on the trustee, and if so, when it was made. The case must therefore be remanded to the county court for further proceedings." (Emphasis supplied.)

In the instant case Gordon's written agreement to pay Mrs. Lyons $50 per week was not binding upon the trustee. Counsel for claimant apparently concede this as they base their case largely on the following statement appearing in Restatement, 1 Trusts, p. 389, sec. 157:

"Although a trust is a spendthrift trust or a trust for support, the interest of the beneficiary can be reached in satisfaction of an enforceable claim against the beneficiary,
"(a) . . .
"(b) for necessary services rendered to the beneficiary or necessary supplies furnished to him;"

It is urged in behalf of claimant that the nursing services supplied by Mrs. Lyons to Gordon were "necessary services," and, as no evidence was offered in behalf of the trustee to rebut the testimony adduced in behalf of claimant that such services were reasonably worth $50 per week, the claim of Mrs. Lyons must be allowed as a matter of law. However, we do not deem the case to be as simple as that in view of this court's decision in *Estate of Ray* (1936), 221 Wis. 18, 265 N. W. 89, 266 N. W. 239.

In *Estate of Ray, supra* (p. 19), one Charles Ray, by his will, bequeathed $100,000 in trust to a trustee "to apply the income thereof, as may be necessary in its opinion, for the support, and maintenance as well as comfort of my said sister and to apply any part of the principal for her comfort if that seem necessary in the opinion of said trustee." Miss Ray, the sister, was totally blind and resided and was cared for at the sanitorium and clinic of claimant Waukesha Spa, Inc. Charles Ray had died in 1926, and the Spa each week ren-

dered bills to the trustee for the board, room, and incidental expenses of Miss Ray and her attendant until Miss Ray died on August 21, 1934. After her death, the Spa filed a claim against the trust in the sum of $2,500 for services of the medical staff of the Spa rendered to Miss Ray during the period from May 21, 1927, to her death. This was the first information that the trustee had that there was any claim for services rendered to Miss Ray which was not included in the weekly statements previously submitted. The trial court disallowed the claim, and, on the appeal, this court affirmed. In the opinion upon the motion for rehearing this court quoted the extract from Restatement, 1 Trusts, p. 389, sec. 157, hereinbefore set forth, and the further quotation from Restatement, 1 Trusts, sec. 187, appearing in the extract from the opinion in the *Razall Case* hereinbefore set forth, and other authorities, and then went on to say (p. 26) :

"There was no attempt made in this case to show that the trustee had in any manner or to any extent failed or neglected to perform its full duty and to carry out the provisions of the will under which it acted. It cannot be held under the facts of this case that there was any abuse of the discretion vested in the trustee. That the interest of a beneficiary in a trust fund or the income therefrom may be reached in a certain limited class of cases seems to be well established, but the facts of this case do not bring it within the purview of that rule of law. Here the claimant was rendering weekly bills; it never advised the trustee that it was rendering any other service than that charged for in the bills which upon their face seemed to include everything necessary for the comfort and maintenance of the beneficiary. If the claimant had furnished medical service, and at the end of the week or when the next bill was rendered, had included and charged therefor and the trustee had refused to pay a reasonable bill, an entirely different situation would have been presented. Here the claimant withheld from the trustee for seven years any knowledge or information that it was furnishing anything for the maintenance and comfort of the beneficiary other than what was specified in its weekly statements. *Any opportunity*

*for the trustee to investigate or to exercise its discretion, which it was required to do in the interests of the parties entitled to the remainder of the income, was destroyed.*

"It may be argued that the trustee should exercise a reasonable discretion with respect to the bill covering a period of seven years as well as one covering a period of seven days. While this argument sounds plausible, it overlooks the fact that the trustee must be given reasonable opportunity for the exercise of the power conferred upon it. Under the facts in this case it had no such opportunity. There was no liability in a suit at law, and under the circumstances of this case a court of equity will not enforce payment out of income in the hands of the trustee." (Emphasis supplied.)

As we analyze the decision in *Estate of Ray,* it is evident that the claim for medical services was not disallowed on the ground that they were not necessary services to the beneficiary of the trust, but rather that the claimant was by its own conduct precluded from claiming compensation therefor. Such conduct consisted of the fact that for over seven years claimant rendered weekly bills to the trustee for the board, room, and incidental expenses of the beneficiary and her attendant without ever once during the beneficiary's lifetime making any claim for the medical services being rendered. By such conduct of withholding any information from the trustee that medical services were being rendered, the trustee, as pointed out in the decision, was prejudiced because it was prevented thereby from making any investigation during the lifetime of the beneficiary to ascertain the true facts, and from exercising any discretion with respect to its duty to supply medical services to the beneficiary. While this court in its opinion in that case does not use the term *"estoppel,"* nevertheless, that seems to be the basis upon which the claimant's claim was denied. We believe that this same principle is applicable to the fact situation in the instant case.

Counsel for Mrs. Lyons seek to distinguish the case of *Estate of Ray, supra,* from the one at bar on the ground that

in the former case the trustee had no knowledge that the medical staff of the Spa was rendering medical services to Miss Ray, while in the instant case the trustee did know that Mrs. Lyons was rendering services to Gordon. However, while Mrs. Lyons did not conceal the fact that she was rendering services to Gordon, and the trustee had full knowledge of such fact, her conduct was such as to induce the trustee to believe that she had been and was being compensated for such services apart from direct payments from the trust to her, and that she was not expecting to be compensated further by the trust. By such conduct, the trustee here, as in the *Ray Case,* was precluded until after the death of the life beneficiary from making any investigation during the life of the beneficiary.

The trustee was fully justified by reason of the peculiar fact situation which existed in entertaining the belief it had throughout the time the services were being rendered by Mrs. Lyons that no claim was to be made therefor by her against the trust. In the first place there are the facts which strongly indicated to the trustee that she had been, and was being, otherwise fully compensated for her services. Not only did such facts induce such belief on the part of the trustee, but they have impressed the trial court and this court in the same manner. We summarize such facts as follows:

(1) When Mrs. Walker conveyed the farm to Mrs. Lyons in the spring of 1948, Mrs. Walker was eighty-two years old and in ill-health so that it was unlikely that she would survive but a few months, and the value of the interest in the farm conveyed to Mrs. Lyons was greatly in excess of any services Mrs. Lyons was likely to render to Mrs. Walker during the few remaining months of her life. From this the trustee could readily conclude that part of the consideration for the deed of the farm was care to be rendered to Gordon whose health was also such that he could not be expected to live very long.

(2) The trustee made extensive improvements to the residence on the farm which increased its value by approximately $2,000 most of the benefit of which went to Mrs. Lyons rather than Gordon.

(3) The belief of the trustee that Mrs. Lyons had received Gordon's share of the sale of the 150 acres of the farm, and of the buildings and lumber therefrom which had been sold off from the remaining 10 acres.

(4) The transfer to her of the household furniture, the half interest in the cottage for which the trustee had expended $1,400, and the turning over of the brand new Pontiac car for which the trust had paid $2,804.45.

(5) Gordon was being paid $250 per month cash during all the period for which Mrs. Lyons claimed services, and in addition received extra cash payments. Practically all of Gordon's expenses, except food, were being paid for by the trust. Besides, Mrs. Lyons, and part of the time her husband and daughter, were benefiting from payments of bills for fuel, etc., and from whatever Gordon spent out of the $250 per month for food. The $250 per month should have been adequate to pay for all food consumed in the household and leave a balance which Gordon could have paid to Mrs. Lyons if he chose to do so. (Mrs. Lyons' explanation of what Gordon did with his monthly allowance was that it all went for food and liquor bills.)

(6) Gordon's life estate in the farm gave him the right to exclusive possession during his lifetime. However, Mrs. Lyons, and part of the time her husband and daughter, occupied it as their own home. (Counsel for claimant state that it is customary when hiring a practical nurse to supply her with board and lodging, but that which Mrs. Lyons and her family were receiving went far beyond this.)

In the light of this summarized factual background, the failure of Mrs. Lyons during the lifetime of Gordon to make any demand upon the trustee for payment is particularly

significant. She knew that it was the practice of the trustee to promptly pay any bills submitted for goods or services furnished to Gordon, if approved by the latter. Such conduct on her part not only misled the trustee into believing that she did not intend to demand compensation from the trustee, but prevented the trustee from making any timely investigation into many of the foregoing enumerated facts. By waiting until after Gordon's death to present her claim, Mrs. Lyons effectively prevented the trustee from questioning Gordon as to such matters as the disposition of the proceeds of the 150 acres of farmland and the farm buildings which were sold in which he had a life estate; as to whether Mrs. Lyons had actually paid him for the transfer of title to the half interest in the cottage, the furniture, and other items of personal property, and the new Pontiac car; and as to the extent to which Mrs. Lyons and members of her family benefited from the $250 per month cash payments to Gordon and the other expenditures the trustee made for maintaining the household.

Such conduct on the part of Mrs. Lyons in making no claim until after Gordon's death was also prejudicial to the trustee in another way. If the trustee had known from the start that she was expecting compensation, it might well have decided that instead of making the extensive improvements to the farm home and paying the other comparatively large payments for maintaining Gordon in such home including the $250 per month cash payments, and in addition thereto paying Mrs. Lyons at the rate of $50 per week, Gordon's maintenance and care could better be supplied in some other manner. The silence of Mrs. Lyons deprived the trustee of exercising its discretion in this respect.

Much stress is placed by counsel for Mrs. Lyons on the conversation which took place between Beck, the officer of the trust company, and Mrs. Lyons in August or September, 1950, at the farm home, but we deem the trial court rightly

minimized the legal significance of such incident. It is true that Mrs. Lyons on that occasion did say something about unpaid wages. Beck, being undoubtedly startled by such remark, told her that she had better consult a lawyer. This incident happened approximately two years before Gordon's death, and yet Mrs. Lyons concedes that she never again mentioned the subject to the trustee. When a lawyer was consulted, he drafted an agreement between Gordon and Mrs. Lyons, *not between the trustee and Mrs. Lyons,* and the existence of such agreement was never made known to the trustee until after Gordon's death. This is strong evidence that Mrs. Lyons was looking exclusively to Gordon and not to the trustee for compensation.

The learned trial court relied upon such evidence in determining as a fact, in his memorandum opinion, that there was no expectation by Mrs. Lyons, when she rendered the services to Gordon, of being paid therefor from the trust by the trustee. While there may be cases, in which one who supplies a necessary service to a beneficiary of a spendthrift trust might be entitled to recover against the trustee of such trust without having had the specific expectation of being paid by the trust at the time such services were rendered, we deem the lack of such expectation is fatal to claimant's claim in the instant case. This is because she had knowledge of the existence of the trust at the time she rendered the services and nevertheless, according to the determination of the trial court, elected to look exclusively to Gordon for payment.

Furthermore, under the rule of our decision in *Estate of Ray, supra,* claimant's conduct was such as might well be held to estop her as a matter of law from asserting her claim against the trust after the death of the spendthrift beneficiary, because the trustee would have been misled thereby to its prejudice in the manner hereinbefore pointed out if the claim were now to be allowed.

*By the Court.*—Judgment affirmed.